# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Nina Y. Wang

Criminal Action No. 22-cr-00266-NYW

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1.     JUSTIN J. MOLL,

    Defendant.

## ORDER

On June 28, 2022, Defendant Justin J. Moll ("Defendant" or "Mr. Moll") removed this criminal action from the County Court of Park County, Colorado to federal court. [Doc. 1]. This Court held an evidentiary hearing as to the propriety of the removal on November 14, 2022. [Doc. 29]. For the reasons set forth herein, it is hereby **ORDERED** that Defendant's removal of this state prosecution to federal court is **PERMITTED** under 28 U.S.C. § 1442(a)(1).

### PROCEDURAL BACKGROUND

Mr. Moll has been charged with reckless driving in violation of Colo. Rev. Stat. § 42-4-1401.[1] [Doc. 1-2 at 3; Doc. 1 at 3, ¶ 2]. The criminal prosecution was initiated in the County Court of Park County, Colorado. [Doc. 1 at 3, ¶ 2]. On June 28, 2022, Mr. Moll filed a Notice of Removal in this Court pursuant to 28 U.S.C. §§ 1442(a) and 1455, purporting to remove the criminal prosecution from state to federal court. [Doc. 1]. At the time the Notice of Removal was

---

[1] "A person who drives a motor vehicle . . . in such a manner as to indicate either a wanton or a willful disregard for the safety of persons or property is guilty of reckless driving." Colo. Rev. Stat. § 42-4-1401(1). Reckless driving is a class 2 misdemeanor traffic offense. § 42-4-1401(2).

filed, Defendant had not yet been arraigned in state court. *See* [Doc. 1-2 at 2]. The People of the State of Colorado (the "State") has not formally moved to remand this case to state court, but did file the "People's Objection to Removal Request by the United States Attorney's Office for the District of Colorado" in state court, which was subsequently re-filed in federal court by Defendant. *See* [Doc. 4-1].

This Court held an evidentiary hearing on November 14, 2022 pursuant to 28 U.S.C. § 1455. [Doc. 29]. At the hearing, the Court heard testimony from Defendant and three other witnesses. [*Id.* at 2]. The Parties have since submitted their respective proposed Findings of Fact and Conclusions of Law addressing the propriety of Defendant's removal of the prosecution from state to federal court. [Doc. 32; Doc. 33]. This matter is ripe for determination.

## FINDINGS OF FACT

Based on the testimony and evidence admitted during the evidentiary hearing and the record before the Court, the Court makes the following findings of fact:

1. Mr. Moll is a postal inspector for the United States Postal Inspection Service ("USPIS") and held this position on July 16, 2021. [Doc. 31 at 13:5–14].[2] Mr. Moll was and remains based in Denver, Colorado. [*Id.* at 13:15–18].

2. The USPIS is the law enforcement arm of the United States Postal Service ("USPS") and protects postal assets, employees, and customers. [*Id.* at 14:2–6]. The work of USPIS includes responding to and investigating crimes with some nexus to the mail, including damage to USPS property and crimes against post offices. [*Id.* at 14:7–12]. USPIS postal inspectors also investigate crime scenes. [*Id.* at 44:10–12].

---

[2] When citing to transcripts, the Court cites to the page and line numbers generated by the transcript.

3.      As a postal inspector, Mr. Moll is authorized to, among other things, serve subpoenas, make arrests, and carry firearms. [*Id.* at 14:13–16].

4.      Mr. Moll has been a postal inspector for approximately five years. Before that, he was a Missouri State Trooper for six years. [*Id.* at 13:19–14:1].

5.      As a law enforcement officer, Mr. Moll has received training on how to safely navigate vehicles through traffic using lights and sirens. [*Id.* at 20:9–23].

6.      Mr. Moll was on official duty as a postal inspector on July 16, 2021. [*Id.* at 14:17–20].

7.      At approximately 7:30 or 8:00 a.m., Mr. Moll learned that his office had received a report of a fire at a post office located in Moffat, Colorado. [*Id.* at 30:15–23].

8.      Moffat is approximately three to three-and-a-half hours from Denver by car. [*Id.* at 30:24–25, 68:14–16].

9.      Once Mr. Moll received word that there had been a fire, he communicated with his supervisor and volunteered to drive to Moffat. [*Id.* at 31:9–18, 43:23–44:5]. His supervisor instructed him to respond to the scene. [*Id.* at 15:2–11].

10.     After his supervisor instructed him to go to Moffat, Mr. Moll got ready to leave, fueled his vehicle, and left for Moffat "[a] little after 9 o'clock." [*Id.* at 15:8–13, 43:23–44:5].

11.     When Mr. Moll left Denver, he had limited information about the status of the scene in Moffat, knowing only that there was a fire and that a Moffat post office customer had made "several" threats to the post office. [*Id.* at 15:14–16, 16:25–17:7]. Mr. Moll attempted to call the supervisor of the Moffat post office, but he reached her voicemail. [*Id.* at 15:17–23].

12.     Mr. Moll believed at the time that it was important to get to Moffat as quickly as possible because he was concerned about scene contamination and evidence destruction. [*Id.*

3

16:1–9]. He testified that he was concerned about evidence being lost because he thought it might rain that day, which could contaminate the evidence. [*Id.* at 16:10–15]. At the time he left Denver, he did not know if anyone had been hurt in the fire or if there was a suspect was at large. [*Id.* at 16:16–17:7].

13. Mr. Moll did not believe that he could rely on state or local authorities to secure the scene or investigate the reported crime because those authorities do not always have jurisdiction to enter federal property and he did not know whether the county where Moffat is located had around-the-clock emergency service. [*Id.* at 16:16–24, 35:15–36:21, 44:24–45:10]. He thought it was "[v]ery possible" that he would be the first person to arrive on the scene. [*Id.* at 36:19–21].

14. Mr. Moll drove to Moffat in an unmarked government vehicle equipped with lights and sirens. [*Id.* at 17:8–18].

15. Mr. Moll engaged his vehicle's lights and sirens when he left Denver. [*Id.* at 17:19–21]. He did so to facilitate the movement of his vehicle through traffic and to alert the public that he was coming in furtherance of a law enforcement objective—getting to a crime scene. [*Id.* at 17:22–18:5].

16. USPIS policy permits the use of lights and sirens "for official purposes" to, among other things, "facilitate the movement of Official Vehicles through traffic" and to "warn of hazards." [Hr'g Ex. 1]. The policy further states that "[u]se of emergency lights or sirens for personal convenience is prohibited and is outside the scope of employment of a Postal Inspector." [*Id.*].

17. Mr. Moll traveled from Denver to Moffat on southbound U.S. Highway 285. [Doc. 31 at 20:24–21:3].

18. Highway 285 is a two-lane highway with one lane traveling in each direction. [*Id.* at 21:24–22:2].

19. While driving on Highway 285, Mr. Moll, having a "clear, straight" line of sight, passed a vehicle that was traveling in front of him after the vehicle "moved over some." [*Id.* at 21:18–20, 22:5–7, 23:21–24:3, 39:15–23]. After Mr. Moll completed the pass and he was back in his own lane, the driver of a truck approaching in the opposite direction flipped him off. [*Id.* at 23:21–24:3, 40:21–41:1].

20. Mr. Moll made the pass because of the importance of getting to the scene of the reported fire. [*Id.* at 24:5–9]. He believed that he could and did make the pass safely because the vehicle in front of him saw his emergency equipment and moved over. [*Id.* at 24:5–16]. Mr. Moll considered the safety of the vehicles traveling in the opposing lane as he made the pass and he was not concerned that he might hit the truck traveling in the opposite lane. [*Id.* at 24:10–19]. Mr. Moll did not swerve in front of the truck or run the truck off the road. [*Id.* at 23:15–18].

21. On July 16, 2021, the truck driver in question—Michael McCully—was at work driving a truck from Poncha Springs, Colorado toward Denver. [*Id.* at 47:10–16]. Mr. McCully was driving between 65 and 70 miles per hour; the speed limit on that particular part of Highway 285 was 65 miles per hour. [*Id.* at 48:17–20, 49:22–24]. Mr. McCulley looked down at his mirrors and was checked his gauges; when he looked up, he saw off in the distance an unmarked police car, with lights and sirens engaged, about one-eighth to one-quarter of a mile away, or "maybe more," straddling the yellow line. [*Id.* at 47:23–48:2, 54:3–18].

22. As Mr. Moll's car came closer to him, Mr. McCulley downshifted and pulled over as far as he could. [*Id.* at 49:12–21, 54:9–25]. He could not recall whether he flipped off the driver of the police vehicle. [*Id.* at 51:3–7]. Mr. McCulley called 911 and reported the incident. [*Id.* at

5

50:14–15]. Mr. McCully's vehicle was not damaged, and he continued on his way to Denver. [*Id.* at 55:6–7, 55:13–14].

23. At about 11:30 a.m., after Mr. Moll's encounter with the truck driver and while he was still on Highway 285 headed to Moffat, Mr. Moll was stopped by Sergeant Clinton Collier. [*Id.* at 25:4–18, 67:5–18].[3]

24. Sergeant Collier was assigned to the Chaffee County area the morning of July 16, 2021 and received a call to be on the lookout for a blue vehicle running lights and sirens that had been the subject of a traffic complaint. [*Id.* at 65:17–24].

25. About 15 minutes later, Sergeant Collier observed Mr. Moll's vehicle traveling with its lights and sirens engaged. [*Id.* at 65:25–66:14]. Sergeant Collier activated his own lights, made a U-turn, and pulled behind Mr. Moll's vehicle "to effect a traffic stop to ascertain as to who the party was and why they were utilizing the lights and sirens." [*Id.*].

26. Sergeant Collier testified that Mr. Moll was driving under the posted speed limit and was observing the laws for operating an authorized emergency vehicle. He also testified that he did not observe any reckless driving. [*Id.* at 71:8–11, 74:17–22, 75:1–5].

27. When Mr. Moll realized that he was being pulled over, he came to a stop on the shoulder of the highway. [*Id.* at 41:12–21].

28. Mr. Moll had not received any new information about the status of the scene in Moffat between his departure from Denver and the traffic stop. [*Id.* at 26:17–22].

29. While they were stopped by the side of the road, Mr. Moll had a conversation with Sergeant Collier about the distance from Denver to Moffat and Mr. Moll's decision to drive with

---

[3] At the time of the traffic stop, Sergeant Collier was a Trooper with the Colorado State Patrol; he has since been promoted to Sergeant. [Doc. 31 at 65:5–16].

his lights and sirens engaged. [*Id.* at 27:4–11]. Sergeant Collier testified that Mr. Moll told him that he believed the crime scene was unsecured and that he needed to get there to ensure the preservation of evidence. [*Id.* at 75:6–10, 75:20–24]. Mr. Moll's objective at this time was still to get to Moffat as quickly as he safely could. [*Id.* at 27:23–28:2].

30. Sergeant Collier let Mr. Moll continue on his way to Moffat. [*Id.* at 27:2–3]. He did not arrest Mr. Moll or write him a ticket. [*Id.* at 75:11–14].

31. Mr. Moll left the traffic stop without his lights and sirens. [*Id.* at 76:5–10].

32. Mr. Moll testified that from the time he left Denver to the time he arrived in Moffat on July 16, 2021, his actions were for no reason other than he was "a postal inspector responding to a report of an arson at a post office." [*Id.* at 28:12–19].[4]

33. It was Mr. Moll's belief at the time that his actions were necessary to carry out his official duties in response to the reported arson. [*Id.* at 28:20–23].

**LEGAL STANDARD**

Under 28 U.S.C. § 1442, a criminal prosecution that is commenced in state court may be removed to federal court if the prosecution is against

> [t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a)(1). Stated differently, § 1442(a)(1) "provides a federal forum to United States officers whose conduct under color of federal law results in criminal prosecution under state law." *City of Aurora by & on Behalf of People of State of Colo. v. Erwin*, 706 F.2d 295, 296 (10th Cir. 1983). Removal under § 1442(a)(1) is permissible when (1) the defendant is a federal officer and

---

[4] The State presented no evidence to rebut this testimony.

(2) the prosecution is for or relating to any act under color of the federal office. *Id.* In addition to these statutory requirements, the Supreme Court has held that "federal officer removal must be predicated on the allegation of a colorable federal defense." *Mesa v. California*, 489 U.S. 121, 129 (1989).

"The Supreme Court has long recognized removal to federal courts in these circumstances as a matter of considerable importance to the United States." *Erwin*, 706 F.2d at 296. "[R]emoval under § 1442(a)(1) and its predecessor statutes was meant to ensure a federal forum in any case where a federal official is entitled to raise a defense arising out of his official duties." *Arizona v. Manypenny*, 451 U.S. 232, 241 (1981). Thus, "Section 1442 is interpreted broadly in favor of removal where, as here, a federal officer is seeking a federal forum." *Hawaii v. Broughton*, No. CR. 13-00415 HG, 2013 WL 3288381, at *2 (D. Haw. June 28, 2013) (citing *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006)); *see also Manypenny*, 451 U.S. at 242 (stating that "the policy favoring removal 'should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).'") (quoting *Willingham v. Morgan*, 395 U.S. 402, 407 (1969)).

After a criminal prosecution is removed to federal court, if the federal court does not order the summary remand of the prosecution, the court must "order an evidentiary hearing to be held promptly and, after such hearing, shall make such disposition of the prosecution as justice shall require." 28 U.S.C. § 1455(b)(5). "If the United States district court determines that removal shall be permitted, it shall so notify the State court in which prosecution is pending, which shall proceed no further." *Id.*

**CONCLUSIONS OF LAW**

**I.      Timeliness**

As mentioned above, the State filed an "Objection" to Defendant's removal in state court. *See* [Doc. 4-1 at 2]. The Objection argued, *inter alia*, that Mr. Moll's Notice of Removal was untimely. [*Id.* at 3–4]. The State never filed this Objection in federal court and never filed a motion to remand the prosecution. In addition, the State does not address any timeliness concerns in its proposed Findings of Fact and Conclusions of Law. *See generally* [Doc. 33]. Thus, any argument that the Notice of Removal was untimely is not properly before this Court.

The untimely removal of a *civil* action is a procedural defect, not a jurisdictional one, and so the failure to raise a timeliness argument with respect to removal of a civil case deems the argument waived. *See Yellow Transp., Inc. v. Apex Digital, Inc.*, 406 F. Supp. 2d 1213, 1217 (D. Kan. 2005) ("Whereas a defect in subject matter jurisdiction is never waived and can be raised at any time, a procedural defect does not involve subject matter jurisdiction and may be waived if not objected to within thirty days after removal."); *Woods v. Ross*, No. 22-3046, 2023 WL 1794170, at *1 (10th Cir. Feb. 7, 2023) (failure to argue that removal of civil case was untimely waived the issue).

However, the Sixth Circuit has concluded that the same is not true for the untimely removal of a criminal prosecution:

> [The] procedural requirements for removal are very different for civil and criminal defendants. Unlike the procedural requirements for removal in civil cases, section [1455] prohibits a late filing unless the federal court first grants the petitioner leave after the petitioner establishes "good cause." 28 U.S.C. § [1455(b)(1)]. Thus, it follows that a late filing without leave of federal court is not a "properly" filed notice of removal, and the civil removal cases—which hold that properly filed petitions automatically effect the removal and divest the state court of jurisdiction—do not apply.

9

*Seaton v. Jabe*, 992 F.2d 79, 81 (6th Cir. 1993). Where a criminal prosecution is untimely removed without leave of the federal court, the state court retains jurisdiction over the prosecution. *Id.*; *see also Olick v. Pennsylvania*, 739 F. App'x 722, 726 n.5 (3d Cir. 2018) (the Third Circuit agreeing that a state court is not deprived of jurisdiction where the removal of a criminal action was untimely). Accordingly, although the State has not formally objected to the removal on timeliness grounds in federal court, in an abundance of caution, the Court affirmatively finds that the Notice of Removal was timely filed.

A notice of removal must be filed within 30 days after the state court arraignment, "or at any time before trial, whichever is earlier." 28 U.S.C. § 1455(b)(1). The state court docket reflects that no arraignment was held in state court prior to the removal of this prosecution. *See* [Doc. 1-2]. The State has offered no evidence to the contrary. Accordingly, the Court concludes that the Notice of Removal was timely filed.

## II.  Federal Officer

Mr. Moll is, and was at the time of the events giving rise to this prosecution, a postal inspector for the USPIS. [Doc. 31 at 13:5–14]. The Court concludes that Mr. Moll is a federal officer for purposes of § 1442(a)(1).

## III.  Actions Under Color of the Federal Office

"To establish that the [prosecution] is 'for' an act under color of office," the federal officer "must show a nexus, a 'causal connection' between the charged conduct and asserted official authority." *Jefferson Cnty. v. Acker*, 527 U.S. 423, 424 (1999). "It must appear that the prosecution of [the defendant], for whatever offense, has arisen out of the acts done by him under color of federal authority and in enforcement of federal law, and he must by direct averment exclude the possibility that it was based on acts or conduct of his not justified by his federal duty."

10

*Mesa*, 489 U.S. at 131–32.  "But the statute does not require that the prosecution must be for the very acts which the officer admits to have been done by him under federal authority.  It is enough that his acts or his presence at the place in performance of his official duty constitute the basis, though mistaken or false, of the state prosecution."  *Id.* at 132.

"Importantly, the State's allegations do not control the causal-connection analysis."  *Texas v. Kleinert*, 855 F.3d 305, 312 (5th Cir. 2017).  "Rather, courts must 'credit the officer's theory of the case' to determine whether the officer 'has made an adequate threshold showing that the suit is for an act under color of office.'"  *Id.* (quoting *Acker*, 527 U.S. at 432 (alterations omitted)).  "An officer is not required to definitively 'exclude the possibility that the suit is based on acts or conduct not justified by his federal duty' before removal."  *Id.* (quoting *Acker*, 527 U.S. at 429 (alterations omitted)).

Crediting Mr. Moll's theory of the case, the Court concludes that the State seeks to prosecute him for actions taken under the color of his federal office.  Mr. Moll was on official USPIS duty on July 16, 2021, responding to the scene of an arson at the direction of his supervisor in an official government car.  [Doc. 31 at 14:17–20, 15:2–11, 17:8–18].  He further testified that he took no action that was not for purposes of his official duties, [*id.* at 28:12–19], which include responding to and investigating crimes against post offices and investigating crime scenes.  [*Id.* at 14:7–12, 44:10–12].  Based on this unrebutted evidence, the Court concludes that there is a causal nexus between Mr. Moll's actions as a federal officer on July 16, 2021 and the reckless driving charge, such that the prosecution is "for" an act taken under color of Mr. Moll's federal office.  *See Broughton*, 2013 WL 3288381, at *4 (finding the requisite causal nexus where the defendant was

charged with a crime that was allegedly committed while he was driving an official government vehicle and "engaged in his authorized work-to-home commute").[5]

## IV.  Colorable Federal Defense

Finally, Mr. Moll must allege a colorable federal defense. *Mesa*, 489 U.S. at 129. "[O]ne of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court"; indeed, this was "[o]ne of the primary purposes of the removal statute." *Willingham*, 395 U.S. at 407. "Section 1442(a)(1) does not require a finding that a defense will be successful for removal to be deemed appropriate; a 'colorable' defense need only be plausible." *Broughton*, 2013 WL 3288381, at *5 (D. Haw. June 28, 2013) (citing *United States v. Todd*, 245 F.3d 691, 693 (8th Cir. 2001)); *see also Kleinert*, 855 F.3d at 313 ("'Colorable' here means plausible, not 'clearly sustainable.'").

The Notice of Removal raises a federal defense under the Supremacy Clause of the United States Constitution. [Doc. 1 at 2; *id.* at 9, ¶ 25]. "Supremacy Clause immunity protects federal officers, acting within their federal authority, from liability under state law." *Kleinert*, 855 F.3d at 313. "Under the Supremacy Clause of the United States Constitution, a defendant may be immune from criminal liability if he can prove that he reasonably believed that his actions were necessary and proper in the performance of his duties." *Broughton*, 2013 WL 3288381, at *5.

---

[5] The State takes the position that Mr. Moll's use of sirens and lights was arbitrary and was "obviously indicative of personal convenience," rendering his conduct "prohibited and outside the scope of employment." [Doc. 33 at 8]. The State directs the Court to no evidence in support, *see* [*id.*], and the Court credits, for the limited purposes of determining the propriety of removal, Mr. Moll's testimony that he engaged his lights and sirens solely to alert the public that he was driving in furtherance of a law enforcement objective. *See* [Doc. 31 at 17:22–18:5]. The State also asserts that Mr. Moll failed to comply with USPS policy because he was "observed passing in a no passing zone" and was "committing state law violations," such that his actions were not undertaken "under the color of his official authority." [Doc. 33 at 8–9]. But pursuant to *Kleinert*, Mr. Moll need not definitively demonstrate that his conduct was justified by his federal duties prior to removal of the case. *Kleinert*, 855 F.3d at 312.

Importantly, "Supremacy Clause immunity does not require that federal law explicitly authorize a violation of state law." *Wyoming v. Livingston*, 443 F.3d 1211, 1227 (10th Cir. 2006). "The question is not whether federal law expressly authorizes violation of state law, but whether the federal official's conduct was reasonably necessary for the performance of his duties." *Id.* at 1227–28. Courts have concluded that where a defendant asserts a defense to a state prosecution pursuant to the Supremacy Clause, the defendant has adequately asserted a colorable defense. *See, e.g.*, *Kleinert*, 855 F.3d at 313 ("Because Kleinert plausibly alleged that he was acting as a federal officer at the time of the shooting, he sufficiently asserted a colorable federal defense."); *Georgia v. Heinze*, No. 1:21-cv-04457-VMC, --- F. Supp. 3d ----, 2022 WL 15265493, at *7 (N.D. Ga. Oct. 25, 2022) ("The Defendants have alleged that they were acting as federal officers in accordance with federal law and therefore entitled to immunity. That is all that is required."); *New York v. Tanella*, 239 F. Supp. 2d 291, 296 (E.D.N.Y. 2003) (finding colorable federal defense where the defendant "assert[ed] that he is immune from prosecution under the Supremacy Clause of the Constitution for acts that he reasonably believed were necessary and proper in the performance of his duties").

Here, Mr. Moll has asserted that he is immune from state prosecution under the Supremacy Clause, contending that he "cannot be prosecuted for a crime under Colorado State law for reasonable acts he performed as a federal officer pursuant to and in furtherance of his statutorily authorized duties." [Doc. 1 at 9, ¶ 25]. "That is all that is required" to assert a colorable federal defense. *Heinze*, 2022 WL 15265493, at *7.

In sum, the Court concludes as a matter of law that Defendant's removal of this case under 28 U.S.C. § 1442(a)(1) was proper. Removal of this prosecution is thus **PERMITTED**, and this

case will proceed in federal court. In so ruling, the Court does not pass on the merits of the charge against Mr. Moll or any defense that may be presented during the course of the prosecution.

Furthermore, the Clerk of Court of the County Court of Park County, Colorado is hereby **NOTIFIED** that removal is permitted, that this Court has jurisdiction over this matter, and that no further action shall be taken in state court. *See* 28 U.S.C. § 1455(b)(5). The Clerk of Court shall send a copy of this Order to:

> County Court, Park County, Colorado
> Attn: Clerk of Court
> 300 4th Street, P.O. Box 190
> Fairplay, CO 80440

## CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1) Removal of this case under 28 U.S.C. § 1442(a)(1) is **PERMITTED**;

(2) The Clerk of Court is **DIRECTED** to send a copy of this Order to the Clerk of Court of the County Court of Park County, Colorado; and

(3) Within **three business days** of the date of this Order, counsel for the Parties shall <u>jointly</u> contact the undersigned's chambers at **303.335.2600** to set a Status Conference in this matter, to discuss how to further proceed.

DATED: February 16, 2023

BY THE COURT:

_____
Nina Y. Wang
United States District Judge